UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDRE C.T. WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-03086-TWP-MG |
| | ) |
| WEXFORD OF INDIANA LLC, and | ) |
| DUSHAN ZATECKY Warden, | ) |
| | ) |
| Defendants. | ) |

### ORDER GRANTING DEFENDANT ZATECKY'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

This matter is before the Court on Defendant Dushan Zatecky's ("Warden Zatecky") Motion for Summary Judgment in which he argues that all claims against him should be dismissed because Plaintiff Andre Wells ("Mr. Wells") did not exhaust his administrative remedies.[1] (Dkt. 25.) Mr. Wells, an inmate at Pendleton Correctional Facility ("PCF"), filed this civil rights action under 42 U.S.C. § 1983 alleging in part that Warden Zatecky was deliberately indifferent to his health and retaliated against him for filing grievances. Because the evidence shows that Mr. Wells failed to complete the grievance process as to these claims, summary judgment is **granted**.

### I.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also

---

[1] Mr. Wells also brings Eighth Amendment claims against Wexford of Indiana, LLC, ("Wexford") who did not raise this affirmative defense.

support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. BACKGROUND

According to Mr. Wells' Complaint, he was exposed to COVID-19 due to the unconstitutional practices of Warden Zatecky and Wexford. (Dkt. 1 at 3−5.) He and other inmates were placed in a gymnasium to quarantine together. *Id.* at 6. Mr. Wells and the other inmates were upset that inmates who were confirmed to be positive with COVID-19 were placed in the gymnasium with healthy inmates, and a riot ensued, exposing him to bodily harm. *Id.* He further alleges that Warden Zatecky retaliated against him for filing grievances about contracting COVID-19 and the riot. *Id.* at 4.

### A. The Grievance Process

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("the Grievance Process") that provides offenders with an opportunity to attempt to resolve grievances before filing suit in federal court. (Dkt. 25-1 at ¶¶ 6−7.) Inmates receive documentation on the

Grievance Process during orientation, and a copy of the Offender Grievance policy is available in the PCF law library. *Id.* at ¶ 12.

The Grievance Process in effect at the time of the incident consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager. (Dkt. 25-2 at 3.) Exhaustion of the grievance process requires an offender to timely complete all three steps. (Dkt. 25-1 at ¶ 11.)

The inmate must file the formal grievance within ten days of the incident. (Dkt. 25-2 at 9.) The grievance specialist must return an unacceptable form or a receipt for an accepted form within ten business days of receiving the grievance. *Id.* If the inmate does not receive a rejected form or receipt, he must alert the grievance specialist of that fact and retain copy of the notice within ten business days. *Id.* The grievance specialist must investigate the matter and respond to the inmate's notification within ten business days. *Id.*

Once an inmate receives a grievance response, if he is dissatisfied he must file an appeal to the warden or his designee within five business days after the date of the grievance response. *Id.* at 12. If the inmate receives no grievance response within twenty business days of the grievance specialist's receipt of the grievance, he may appeal as though the grievance has been denied. *Id.* at 11. If the inmate is dissatisfied with the warden's response, he must file an appeal to the IDOC Grievance Manager within five business days of receiving the warden's response. *Id.* at 12.

An inmate may file a grievance or grievance appeal outside of the deadlines if he shows good cause for doing so. *Id.* at 13. According to the policy, "[i]f there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of

3

paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review." *Id.*

B.     **Mr. Wells' Use of the Grievance Process**

Christina Conyers ("Ms. Conyers") is the grievance specialist at PCF.  (Dkt. 25-1 at ¶ 2.) She oversees the Grievance Process and has access to grievance records at PCF.  *Id.* at ¶ 4.  She reviewed Mr. Wells' grievance records.  *Id.* at ¶ 24.  Her review indicates that Mr. Wells failed to complete the appeal process with his deliberate indifference claim, and he failed to initiate the grievance process with the retaliation issue.  *Id.*

1.     **Deliberate Indifference Grievance**

On May 13, 2020, Mr. Wells filed a grievance complaining about being exposed to COVID-19 and requesting to receive an antibody test. (Dkt. 25-4 at 1.)  Ms. Conyers denied the grievance on May 28, 2020.  *Id.* at 2.  Mr. Wells filed an appeal.  *Id.* at 3.  Warden Zatecky denied the appeal on June 23, 2020.  *Id.* at 5.  Mr. Wells signed the appeal form stating he disagreed with the warden's response and dated it July 6, 2020.  *Id.* at 6.

On July 17, 2020, Ms. Conyers returned the appeal form because it was due by July 1, 2020, but she had not received it until July 15, 2020.  *Id.* at 8.  That same day—likely in response to the rejection—Mr. Wells submitted a Request For Interview form directed at Ms. Conyers, explaining that he was housed in segregation and did not have access to any paperwork, including the appeal form, until July 3, 2020.  *Id.* at 9.  He asked for the days he was without access to the form to not count against him.  *Id*.  The grievance was again returned for being late on July 22, 2020.  *Id.* at 7.  Mr. Wells submitted another request for interview on July 26, 2020 asking why being in segregation without writing utensils and the necessary documents did not excuse his belated appeal. (Dkt. 34-5.)  Ms. Conyers did not write a response to the request.  *Id.*

### 2. Retaliation Grievance

Although Warden Zatecky asserts he has no record that Mr. Wells attempted to file a grievance regarding the alleged retaliation, Mr. Wells includes documents indicating he made some effort to grieve this issue.

In a Request For Interview form dated May 18, 2020, Mr. Wells advises Ms. Conyers that he believed Warden Zatecky was retaliating against him for filing a grievance about being exposed to COVID-19 and the related riot by issuing a conduct report for disorderly conduct without providing him a hearing. (Dkt. 34-2 at 1.) He wrote a follow-up Request For Interview on May 28, 2020, advising he had not received a response to his May 18, 2020 request. *Id.* at 2. In a grievance form also dated May 18, 2020, he wrote, "It has been twenty days since I sought informal resolution regarding retaliation I believe Zatecky used against me[.]" *Id.* at 3. None of these forms have facility responses or are stamped as being received. *Id.*

Mr. Wells took no further action on this issue until writing a Request For Interview form to Warden Zatecky on August 18, 2020, and again on August 28, 2020, asking why no one had responded to this issue. (Dkt. 34-1 at 1−2.) He then filed a grievance on September 8, 2020 and a grievance appeal on September 21, 2020, arguing that he received the conduct report out of retaliation and requesting a hearing. *Id.* at 3−4. Again, none of these forms have facility responses or are stamped as being received.

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524−25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." *Id.* at 532 (citation omitted).  The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion is an affirmative defense, and the defendant bears the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

"The exhaustion requirement, however, 'hinges on the availab[ility] of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Reid*, 962 F.3d at 329 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  A grievance process may be unavailable if the prison fails to respond to an inmate's grievance, making the process unavailable.  *Id*.  It may also be unavailable if the process is "so opaque that it becomes, practically speaking, incapable of use."  *Ross*, 578 U.S. at 643.  For the process to be opaque, the rules must be so confusing that no reasonable prisoner could follow them.  *Id.* at 644.

The undisputed evidence shows that Mr. Wells failed to complete the grievance process. First, with his grievance concerning the prison's deliberate indifference to his health and safety, he filed the grievance appeal too late.  He argues that he should be excused from filing the appeal late because he was in segregation on its due date, without access to his paperwork or writing utensils. (Dkt. 34 at 2.)  The grievance process provides that an inmate may ask permission to file a belated

6

grievance appeal, but he must do so by submitting a separate piece of paper *with* the grievance appeal explaining why it was late. (Dkt. 25-2 at 13.) This is not a confusing requirement, but Mr. Wells failed to follow it by asking to be excused from the deadline only after he received the rejected appeal. (Dkt. 25-4 at 9; Dkt. 34-5.)

With respect to the retaliation-related grievances, Mr. Wells (after receiving no response to his informal requests) filed a grievance on May 18, 2020. (Dkt. 34-2.) But there is no evidence that this grievance was ever received. (Dkt. 25-3; Dkt. 25-1 at ¶ 24.) Mr. Wells did not indicate that he took steps to alert Ms. Conyers that he had not received a receipt or a response rejecting the grievance. (Dkt. 25-2 at 9.) Nor did he allege that he tried to file a grievance appeal of the May grievance. Rather, he waited until August 2020 to attempt to initiate the grievance process for his retaliation claim anew, filing a grievance and grievance appeal. By that time, he was far past the deadline for filing a grievance.

The evidence shows that the grievance process was available to Mr. Wells; he just failed to follow the steps as the rules dictated. *Reid*, 962 F.3d at 329. Accordingly, Warden Zatecky's Motion for Summary Judgment must be **granted**.

## IV.  CONCLUSION

Defendant Dushan Zatecky's Motion for Summary Judgment, (Dkt. [25]), is **GRANTED**. The claims against Warden Zatecky are **DISMISSED without prejudice**. The **Clerk is directed to terminate** Dushan Zatecky as a defendant on the docket. No final judgment shall issue.

The case proceeds with Mr. Wells' claims against defendant, Wexford of Indiana LLC, and the pretrial schedule issued on June 23, 2021, (Dkt. 32), remains in effect.

**SO ORDERED.**

Date: 11/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andre C.T. Wells, #196966
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana 46064

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Erika Lauren Steuerwald
KATZ KORIN CUNNINGHAM, P.C.
esteuerwald@kkclegal.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL'S OFFICE
gustavo.jimenez@atg.in.gov

W. Andrew Kirtley
INDIANA ATTORNEY GENERAL'S OFFICE
andrew.kirtley@atg.in.gov